418 So.2d 1247 (1982)
Francisco YANES, Appellant,
v.
STATE of Florida, Appellee.
No. 81-1244.
District Court of Appeal of Florida, Fourth District.
September 8, 1982.
Jerome M. Rosenblum, Hollywood, for appellant.
Jim Smith, Atty. Gen., Tallahassee, and Russell S. Bohn, Asst. Atty. Gen., West Palm Beach, for appellee.
WALDEN, Judge.
Yanes was convicted of trafficking in cocaine. He appeals. We reverse and remand for a new trial.
Several points merit discussion because they jointly and singly constitute reversible error.
First, after the jury had retired to deliberate, the jury returned and requested, "May we have a copy of the law pertaining to trafficking in cocaine and possession of cocaine?" The court responded, "I don't want to take my book apart because I've got lots of sheets in here. I don't want you all reading about anything in here except the two things that I have marked. The first mark is possession and the second mark is trafficking in cannabis." Whereupon, the court, over objection, gave the jury his whole book of jury instructions which they took back with them to the jury room. It appears from the colloquy that defense counsel had never seen the actual book and the court declined to make it a part of the record. We assume that it consisted of, at least, all the standard jury instructions covering different crimes and legal situations inasmuch as the State does not contend otherwise.
Florida Rule of Criminal Procedure 3.400(c) provides, "Materials to the Jury Room. The court may permit the jury, upon retiring for deliberation, to take to the jury room: ... (c) any instructions given; but if any instruction is taken all the instructions shall be taken; ... ." Clearly, *1248 the action giving the jury the whole book is violative of this Rule. We do not know if the jury heeded the court's instruction to read only the two marked instructions, or, if it succumbed to temptation and curiosity by considering other charges  charges other than those earlier orally charged as being applicable to the case. Regardless, the jury had access to many instructions of law which were inapplicable and potentially damaging to Yanes.
In Johnson v. State, 27 Fla. 245, 9 So. 208 (1891), it was held, "it is erroneous to allow the jury, after retiring to consider of their verdict, to have access to law books of any description. They must get their instructions as to the law of the case from the court, and not from their own perusal of the books." (emphasis supplied). And in Smith v. State, 95 So.2d 525 (Fla. 1957), it was deemed error to allow the jury to take a dictionary into the jury room without notice to counsel. Here, of course, there was notice which was met with a timely objection which was incorrectly overruled.
The State admits that the trial judge handled the situation in an unusual way and agrees that the proper procedure would have been for the judge to simply read the requested sections to the jury. However, the State contends that the action was harmless error citing Stone v. State, 71 Fla. 514, 71 So. 634 (1916). We do not agree that it was harmless error. We distinguish the Stone case. In Stone the two requested charges that were refused by the court were delivered to the jury and taken to the jury room along with the charges that were given. However, the refused charges were indorsed by the judge "refused because covered by the general charge." In Stone, different from here, the parameters of the material could be measured and it was noticed that the two refused charges were "patently covered by charges given." And so in Stone the two charges which should not have been taken to the jury room were merely duplicitous or surplusage. However, in the instant case many charges were made available to the jury which were not covered by the charges given.
As to the act being only harmless error, we feel that the jury process must be firmly governed to the end that the jury will decide cases limited strictly to the evidence presented in court and the law charged to them by the court. A slipshod attitude as to such matters can only undermine the acceptance and confidence which our system has earned. Illustrative of the jealous concern for the sanctity of the process is the case of Holzapfel v. State, 120 So.2d 195 (Fla. 3d DCA 1960). The bailiff, upon being asked by the jury, informed the jury that grand larceny was of the value of more than $100.00. The Holzapfel court held that the court and the court alone is entitled to instruct jurors as to the law and the fact that the statement made was a correct statement of the law would not prevent same from being a substantial error.
We are satisfied that this point requires reversal.
The second item has become moot. Regardless, we mention in passing that the State failed to make pre-trial discovery as concerns a report of a quantitative analysis of the suspect cocaine. Yanes made a motion in limine to exclude which was denied without conducting a hearing as mandated by Richardson v. State, 246 So.2d 771 (Fla. 1971). This was error but it is now of no moment since the report or its contents have now been made known.
Third, there were two co-defendants charged along with Yanes. These co-defendants skipped bond and were not present for trial. Regardless, Detective Tango was allowed to testify before the jury as to statements made by the absent co-defendants. Such testimony was highly incriminating and tended to establish a conspiracy involving Yanes. The allowance of such testimony constituted reversible error. The error was preserved by timely and sufficient objections and motions by Yanes.
The admission of the hearsay testimony pursuant to the co-conspirator exception to the hearsay rule was acceptable provided that the trial court instructed the jury at *1249 the time as requested by counsel in accordance with the provision of Section 90.803(18)(e), Florida Statutes (1981), or as outlined in Boyd v. State, 389 So.2d 642 (Fla. 2d DCA 1980). This was not done. We reverse this point upon authority of Boyd v. State, supra, and Eaton v. State, 410 So.2d 933 (Fla. 4th DCA 1981).
The remaining points raised by Yanes are without merit.
Finally as a communication between the court and appellate counsel generally and not as a rebuke, we note that Yanes raises nine points (really twelve inasmuch as one of them was subdivided into four parts) and cites 96 cases. While we are unwilling to say that counsel in their briefing should "never" offer as many points and citations, we do say that Yanes over did it with the result that the appeal was made unnecessarily tedious and difficult as we undertook to separate the wheat from the chaff. Appreciating the zeal of counsel to do a good job and not overlook anything, and sympathetic to self-protection motivations in the increasing sensitivity to malpractice exposure, we can only record that appellate overkills are counter-productive. Counsel should be able to determine what points have merit or are at least fairly arguable. To include others only obfuscates and weakens the real impact of the appeal.
REVERSED AND REMANDED FOR A NEW TRIAL.
LETTS, C.J., and DOWNEY, J., concur.